IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 16-0591-WS-MU |
| | ) |
| JASON WINDHAM d/b/a BATTER UP SPORTS BAR, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

This matter comes before the Court on Plaintiff's Motion for Summary Judgment (doc. 14). The Motion has been briefed and is now ripe for disposition.

**I.     Background Facts.[1]**

A few minutes past 10:00 p.m. on January 3, 2015, Douglas Sharp walked into the Batter Up Sports Bar and Grill in Demopolis, Alabama. (Doc. 14, Exh. A(3).) Batter Up is a small establishment, with an estimated capacity of just 48 patrons. (*Id.*; doc. 17-1, ¶ 6.) Although it was a Saturday night, the sports bar was not full; to the contrary, between the hours of 10:00 p.m. and midnight, there were approximately 21-22 customers inside Batter Up at any given time.

---

[1]     The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Smith v. LePage*, 834 F.3d 1285, 1296 (11th Cir. 2016) ("It is not this Court's function to weigh the facts and decide the truth of the matter at summary judgment. … Instead, where there are varying accounts of what happened, the proper standard requires us to adopt the account most favorable to the non-movants.") (citations and internal quotation marks omitted). Thus, defendant's evidence is taken as true and all justifiable inferences are drawn in his favor. Also, federal courts cannot weigh credibility at the summary judgment stage. *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) ("Even if a district court believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices."). Therefore, the Court will "make no credibility determinations or choose between conflicting testimony, but instead accept[s] [non-movant]'s version of the facts drawing all justifiable inferences in [non-movant]'s favor." *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008).

(Doc. 14, Exh. A(3).) Batter Up was no busier on January 3, 2015 than it was on a typical Saturday night during that time of year, and its gross receipts were no higher than average. (Doc. 17-1, ¶ 8.) Neither Sharp nor any of the other patrons were required to pay a cover charge to enter the establishment. (Doc. 14, Exh. A(3); doc. 17-1, ¶ 7.)

Sharp remained inside Batter Up for nearly two hours that night. (Doc. 14, Exh. A(3).) He ordered a beer and some food, and watched live sporting events on the 13 television sets positioned inside and outside the venue. (*Id.*) Four of those televisions were showing the *Ultimate Fighting Championship 182: Jones v. Cormier* broadcast, including undercard bouts and commentary. (*Id.*) Sharp watched the entire three-round match between undercard fighters Donald Cerrone and Myles Jury, and then watched the entire five-round main event between Jon Jones and Daniel Cormier. (*Id.*) In Sharp's opinion, Jones (who won by unanimous decision) controlled the action throughout and Cormier ran out of steam well before the bout's conclusion. (*Id.*) At around 11:55 p.m., Sharp left the establishment. (*Id.*)

These events inside Batter Up Sports Bar and Grill were entirely typical of a scene that played out in bars and restaurants throughout the country exhibiting this UFC event (the "Event"), with one important difference. Douglas Sharp was no ordinary customer or enthusiast of the pugilistic arts; rather, he was there in his capacity as a private investigator with Sharp One Investigations. He had been retained by Joe Hand Promotions, Inc., a closed circuit distributor of sports and entertainment programming that owned the exclusive commercial exhibition rights to the Event. (Doc. 15, Exh. A, ¶ 3.) Joe Hand marketed the sublicensing (commercial exhibition) rights to the Event to its commercial customers, consisting of bars, restaurants, casinos, racetracks and so on. (*Id.*) Any domestic commercial establishment that wished to broadcast the Event was required to pay a commercial sublicense fee to Joe Hand. (*Id.*, ¶ 7.) The amount of the fee varied depended on the size of the establishment; however, for a facility the size of Batter Up (*i.e.*, one with a capacity of 50 or fewer patrons), the sublicense fee for the Event was $900. (*Id.*) The problem was that Batter Up never lawfully licensed the Event from Joe Hand, and never paid the requisite $900 sublicense fee for the rights to broadcast it commercially. (*Id.*, ¶ 8.) For that reason, Joe Hand filed a Complaint (doc. 1) against Jason Windham, the manager of Batter Up, in this District Court alleging that, by virtue of Batter Up's unauthorized exhibition of the event, Windham had engaged in satellite or cable piracy, in

violation of 47 U.S.C. §§ 605 or 553. Joe Hand seeks statutory damages, in the discretion of the Court, for willful violation of the statute, as well as interest, costs and attorney's fees.

Nearly all of these facts are undisputed. Indeed, defendant's Response specifically concedes that "he showed the event in question at … Batter Up Sports Bar and did so under a residential account with DirecTV and not a commercial account." (Doc. 17, at 3.) The only additional facts offered by defendant, Windham, are as follows: Batter Up originally established its DirecTV service in 2006 or 2007, when the restaurant first opened. (Doc. 17-1, ¶ 3.) Windham was not the manager of Batter Up at that time, and had no involvement in setting up the facility's DirectTV service. (*Id.*) Batter Up's DirecTV service was established as a residential account; however, Windham was unaware of that fact. (*Id.*, ¶ 4.) When he learned that the restaurant had a residential DirecTV account (sometime after the Event but before Windham was in communication with Joe Hand or its agents), Windham promptly reclassified the account as a commercial account. (*Id.*) The only promotion that Windham did for the Event consisted of "a couple of Facebook posts." (*Id.*, ¶ 9.)

**II.     Summary Judgment Standard.**

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed.R.Civ.P. The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual

determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

Here, of course, the movant is the plaintiff, seeking summary judgment on issues for which it would bear the burden of proof at trial. In that context, the movant "must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence … that would entitle it to a directed verdict if not controverted at trial. In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (citation omitted); *see also Adams v. BSI Management Systems America, Inc.*, 523 Fed.Appx. 658, 659-60 (11th Cir. July 17, 2013). If Joe Hand meets that burden, then Windham, "in order to avoid summary judgment, must come forward with evidence sufficient to call into question the inference created by the movant's evidence on the particular material fact." *Fitzpatrick*, 2 F.3d at 1116. Summary judgment is to be granted for the movant in these circumstances "[o]nly if after introduction of the non-movant's evidence, the combined body of evidence … is still such that the movant would be entitled to a directed verdict at trial – that is, that no reasonable jury could find for the non-movant." *Id.*

### III. Analysis.

Plaintiff's claims are asserted under the Federal Communications Act of 1934. The key statutory language is as follows:

> "No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, [or] substance … of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate … communication by radio and use such communication … for his own benefit or for the benefit of another not entitled thereto."

47 U.S.C. § 605(a). Although § 605(a) is framed in terms of "radio communication," it is well settled that the statute also reaches piracy of satellite signals. *See, e.g., TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196, 207 (3rd Cir. 2001) ("We therefore conclude that § 605 encompasses the interception of satellite transmissions to the extent reception or interception occurs prior to or not in connection with, distribution of the service over a cable system …") (citation and internal

quotation marks omitted).[2]  Again, Windham has admitted that he showed the Event at a commercial establishment (Batter Up Sports Bar) without authorization from Joe Hand, the entity holding exclusive commercial exhibition rights to said Event.  Those undisputed facts establish defendant's liability under § 605, without regard for Windham's intent or good faith or lack thereof.  *See, e.g., DirecTV v. Crespin*, 224 Fed.Appx. 741, 757 (10th Cir. Mar. 16, 2007) ("§ 605(a) does not have an intent requirement"); *Joe Hand Promotions, Inc. v. Young*, 2010 WL 1979388, *4 (W.D. Ky. May 14, 2010) (determining in § 605(a) context that "a finding of intent, knowledge or willfulness is not required for liability purposes," and that "a finding of liability is appropriate" where "[t]here is no genuine issue of material fact that Defendants … exhibit[ed] the UFC Fight in their commercial establishment without authorization from Plaintiff").

The only summary judgment dispute between the parties lies in the realm of damages.[3]  By its terms, § 605 allows a plaintiff to make an election between actual damages and statutory damages.  *See* 47 U.S.C. § 605(e)(3)(C) ("Damages awarded by any court under this section shall be computed, at the election of the aggrieved party, in accordance with either of the following subclauses; … (I) the party aggrieved may recover the actual damages suffered by him as a result of the violation and any profits of the violator …; or (II) the party aggrieved may recover an award of statutory damages.").  Joe Hand has elected the statutory damages option.  *See* doc. 14, at 6 ("due to the difficulty in quantifying actual damages caused by the Defendant's

---

[2]  *See also Joe Hand Promotions, Inc. v. Roseville Lodge No. 1293*, 161 F. Supp.3d 910, 914-15 (E.D. Cal. 2016) (explaining that § 605(a) "prohibits commercial establishments from intercepting and broadcasting to [their] patrons satellite cable programming") (citation omitted); *J & J Sports Productions, Inc. v. Morelia Mexican Restaurant, Inc.*, 126 F. Supp.3d 809, 815 (N.D. Tex. 2015) (observing that § 605 is violated by "[t]he unauthorized interception of satellite … transmissions"); *Joe Hand Promotions, Inc. v. Coaches Sports Bar*, 812 F. Supp.2d 702, 703-04 (E.D.N.C. 2011) ("According to the complaint, Joe Hand's broadcast was intercepted via satellite, bringing the violation within the ambit of section 605."); *J & J Productions, Inc. v. Schmalz*, 745 F. Supp.2d 844, 849 (S.D. Ohio 2010) ("Section 605(a), thus protects only cable programming as it is being transmitted via satellite signal.").

[3]  Windham acknowledges as much, by writing in his Response the following: "The Plaintiff may be entitled to summary judgment against Defendant, Jason Windham, as a matter of law on the issue of liability.  However, Plaintiff is not entitled to summary judgment against the Defendant as a matter of law on the issue of damages because a genuine dispute of material fact exists …." (Doc. 17, at 7.)

violation, Plaintiff elects for statutory damages"). In light of that unequivocal election, the damages analysis will focus exclusively on the statutory damages prong.[4]

As a general proposition, statutory damages are to be awarded in an amount between $1,000 and $10,000, in the court's discretion. *See* 47 U.S.C. § 605(e)(3)(C)(i)(II) ("the party aggrieved may recover an award of statutory damages for each violation of subsection (a) … in a sum of not less than $1,000 or more than $10,000, as the court considers just"). Joe Hand seeks an award of $5,000 under this provision. There are, however, two other statutory provisions that are – or may be – in play here. Both relate to Windham's state of mind. First, where a violation "was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages … by an amount of not more than $100,000 for each violation." 47 U.S.C. § 605(e)(3)(C)(ii). Second, on the opposite end of the spectrum, where "the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $250." 47 U.S.C. § 605(e)(3)(C)(iii). Unsurprisingly, Joe Hand invokes the "willful violation" provision and requests a damages enhancement of $20,000, whereas Windham cites the "no reason to believe" provision and argues that his liability should be capped at $250. (*Compare* doc. 14, at 9-11 *with* doc. 17, at 5-6.)

---

[4] Curiously, even after electing statutory damages, Joe Hand's principal brief on summary judgment reels off a litany of purported actual damages, including lost licensing fees, loss of business opportunities and goodwill, loss of legitimate commercial establishments as customers because of unfair competition by entities that pirate satellite broadcasts, inability of legitimate establishments to recover sublicense fees because of unfair competition by those who offer stolen programming to their patrons for free, loss of customers to legitimate establishments because of advertising by unauthorized establishments, erosion of the base of potential patrons, loss of establishments as future customers of Joe Hand because of perceived misrepresentations by Joe Hand relating to locations of other entities licensed to broadcast an event, and so on. (Doc. 14, at 7-9.) Plaintiff having elected statutory damages in lieu of actual damages, any subsequent request for "additional compensation" spanning multiple categories of actual damages is **denied** as fundamentally incompatible with such election. Joe Hand cannot obtain both types of damages, and its election is binding. *See, e.g., Kingsvision Pay-Per-View, Ltd. v. Scott E's Pub, Inc.*, 146 F. Supp.2d 955, 958 (E.D. Wis. 2001) ("A party whose rights have been violated under § 605 can elect either actual damages or statutory damages.").

Without citations to authority, Windham recites a list of five factors that he says courts have considered in determining whether a defendant's willful conduct justifies enhanced damages under § 605(e)(3)(C)(ii), to-wit: (i) whether defendant repeatedly violated the statute over an extended period of time; (ii) whether defendant reaped substantial unlawful monetary gains; (iii) whether defendant advertised the broadcast; (iv) whether defendant collected a cover charge or premium prices for food and drink; and (v) the magnitude of plaintiff's actual damages. (Doc. 17, at 5.) Case law does support that proposition. *See, e.g., Zuffa, LLC v. Al-Shaikh*, 2011 WL 1539878, *8 (S.D. Ala. Apr. 21, 2011) ("Courts consider several factors in determining whether a defendant's willful conduct justifies increased damages: (1) repeated violations over an extended period of time; (2) substantial unlawful monetary gains; (3) advertising of the broadcast; (4) charging of a cover charge or premiums for food and drinks; or (5) plaintiff's significant actual damages.").[5] However, the threshold question is whether Windham's violation of § 605(a) was willful at all, so as to give rise to eligibility for enhanced damages.

In support of its Rule 56 Motion, Joe Hand has presented circumstantial evidence that Windham's conduct was willful. After all, plaintiff reasons, Windham "could not have 'innocently' accessed the broadcast of the Event." (Doc. 14, at 9.) He must have known that he did not pay a sublicense fee to Joe Hand for the Event. He advertised the Event on Facebook. And various courts have concluded that the fact of an unauthorized broadcast itself is strong evidence of willfulness. *See, e.g., Entertainment by J & J, Inc. v. Al-Waha Enterprises, Inc.*, 219 F. Supp.2d 769, 776-77 (S.D. Tex. 2002) (noting "the limited methods of intercepting closed circuit broadcasting of pay-per-view events and the low probability that a commercial establishment could intercept such a broadcast merely by chance"); *Time Warner Cable of New York City v. Googies Luncheonette, Inc.*, 77 F. Supp.2d 485, 490 (S.D.N.Y. 1999) ("Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems.").

---

[5]     *See also J & J Sports Productions Inc. v. Johnny's Restaurant*, 2016 WL 8254906, *6 (E.D.N.Y. Dec. 15, 2016); *J & J Sports Productions, Inc. v. Khin*, 2016 WL 9046677, *5 (N.D. Ga. Mar. 31, 2016); *G & G Closed Circuit Events LLC v. Antar*, 2013 WL 1629414, *1 (D. Ariz. Apr. 16, 2013).

On the other hand, defendant offers the Affidavit of Jason Windham, wherein he professes lack of awareness that the DirecTV account from which Batter Up broadcast the Event had been established as a residential account, rather than a commercial account, and further explains that as soon as he learned of the problem (not from Joe Hand, he hastens to add), Windham changed the account to a commercial account. As further evidence of his lack of willfulness, Windham's Affidavit points out that Batter Up did not charge a cover from patrons on the night of the Event, did not obtain higher than average gross receipts that night, and engaged in minimal promotion of the Event. Such evidence, if deemed credible at trial, would appear to cut against a finding of willfulness (as required for enhanced damages under § 605(e)(3)(C)(ii)), and might favor a reduction of statutory damages to as low as $250 under the "no reason to believe" provision of § 605(e)(3)(C)(iii).

Notwithstanding the obvious triable issue as to Windham's state of mind (and particularly whether his violation of § 605(a) was willful, on the one hand, or the product of lack of awareness or reason to believe there was a problem, on the other), Joe Hand insists that it is entitled to summary judgment on the issue of damages. In so arguing, Joe Hand does not suggest that it would be entitled to a willfulness finding even if the factual averments in the Windham Affidavit are taken as true. Instead, Joe Hand's position is that "self-serving affidavits … cannot defeat a properly supported motion for summary judgment" and that this Court should reject Windham's Affidavit because it is not corroborated by "billing records, contracts, or documents of any kind with DirecTV." (Doc. 20, at 3.)

This line of reasoning essentially calls for credibility determinations, and thereby flies in the face of the black-letter principle that "it is not proper to grant summary judgment on the basis of credibility choices." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013); *see also Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016) (on summary judgment, a court "may not weigh conflicting evidence or make credibility determinations of its own") (citation omitted). Indeed, the Eleventh Circuit has explained that a non-movant's self-serving sworn statements may not be discarded at the summary judgment stage, and that a self-serving affidavit by itself may defeat summary judgment and give rise to a genuine issue of material fact. *See, e.g., Feliciano*, 707 F.3d at 1253 ("To be sure, Feliciano's sworn statements are self-serving, but that alone does not permit us to disregard them at the summary judgment stage. … [C]ourts routinely and properly deny summary judgment on the basis of a party's sworn

testimony even though it is self-serving.") (citation and internal quotation marks omitted); *Strickland v. Norfolk Southern Ry. Co.*, 692 F.3d 1151, 1160 (11th Cir. 2012) ("Our case law recognizes that, even in the absence of collaborative evidence, a plaintiff's own testimony may be sufficient to withstand summary judgment."); *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 893 (5th Cir. 1980) ("a genuine issue can exist by virtue of a party's affidavit"); *Crabtree v. Volkert, Inc.*, 2012 WL 6093802, *1 n.4 (S.D. Ala. Dec. 7, 2012) (recognizing that on summary judgment, "[n]or is there any ban on declarations that serve a declarant's own interests," and that "the declarations, themselves, are record evidence" that may be properly considered on summary judgment). The Court therefore declines to adopt Joe Hand's legal position that an "unsupported, self-serving affidavit is insufficient in defeating a motion for summary judgment." (Doc. 20, at 3.)

Because Windham's Affidavit is properly considered on summary judgment, and because Joe Hand advances no argument that it would be entitled to summary judgment on the issue of willfulness/state of mind even if the factual allegations in that Affidavit are taken as true, plaintiff's Motion for Summary Judgment is **denied** as to damages.

## IV. Conclusion.

For all of the foregoing reasons, it is **ordered** as follows:

1. Plaintiff's Motion for Summary Judgment (doc. 14) is **granted in part**, and **denied in part**;
2. The Motion is **granted** as to liability, and the Court finds as a matter of law that defendant violated 47 U.S.C. § 605(a) by engaging in the unauthorized broadcast of *Ultimate Fighting Championship 182: Jones v. Cormier* on January 3, 2015, an event as to which plaintiff owned the exclusive domestic commercial distribution rights;
3. The Motion is **denied** as to damages, because genuine issues of material fact exist as to whether defendant's violation was willful (thereby triggering eligibility for enhanced damages of up to $100,000 pursuant to 47 U.S.C. § 605(e)(3)(C)(ii)) or whether defendant was unaware and had no reason to believe his acts constituted a violation (thereby authorizing reduction of statutory damages to as little as $250 pursuant to 47 U.S.C. § 605(e)(3)(C)(iii)); and

4. This action remains set for a Final Pretrial Conference before the undersigned on **January 16, 2018** at **10:00 a.m.**, with a non-jury trial on damages to follow during the **February 2018** civil term.[6]

DONE and ORDERED this 29th day of November, 2017.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[6] The parties are cautioned that this Order's determination of liability for Windham under § 605(a) exposes him to the certainty of an attorney's fee award in Joe Hand's favor at the conclusion of the case. Such an award is mandatory. *See* 47 U.S.C. § 605(e)(3)(B)(iii) ("The court … shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails."); *Crespin*, 224 Fed.Appx. at 758 ("an award of attorney fees for a violation of § 605(a) is mandatory"); *Kingvision Pay-Per-View, Ltd. v. Gutierrez*, 544 F. Supp.2d 1179, 1186 (D. Colo. 2008) ("As the prevailing party under 47 U.S.C. § 605, Plaintiff is entitled to its reasonable attorney's fees and costs."); *International Cablevision, Inc. v. Cancari*, 960 F. Supp. 28 (W.D.N.Y. 1997) ("[T]he aggrieved party is entitled to a mandatory award of its full costs, including reasonable attorney's fees. 47 U.S.C. § 605(e)(3)(B)(iii)"); *Top Rank Inc. v. Tacos Mexicanos*, 2003 WL 21143072, *6 (E.D.N.Y. Mar. 28, 2003) ("An award of fees and costs is mandatory pursuant to 47 U.S.C. § 605(e)(3)(B)(iii).").